STATE of Missouri, on the Relation of
ASSOCIATED TRANSPORTS,
INC., Appellant,

v.

Tyre BURTON, E. L. McClintock, D. D. Mc-
Donald, William Barton, and Frank Iuen,
Members of and Comprising the Public
Service Commission of the State of Mis-
souri, Respondents.

No. 23530.

Kansas City Court of Appeals.

Missouri.

April 2, 1962.

James W. Wrape, Memphis, Tenn., Charles H. Howard, Jefferson City, Wilbur F. Daniels, Fayette, for appellant.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Gen. Counsel, Jefferson City, for respondents.

CROSS, Judge.

This appeal is from a judgment of the Circuit Court of Cole County, Missouri, in certiorari proceedings, affirming an order of respondent Public Service Commission of Missouri granting additional authority to applicant Speedway Transports, Inc., a common carrier, under its existing certificate of convenience and necessity. The additional authority afforded by the order permits Speedway to transport automobiles and trucks, by the driveaway and truckaway method, between the Chrysler Corporation Assembly Plant in Valley Park, Missouri, and all points in Missouri.

Two hearings were had before the Commission. At the second hearing the Chrysler Corporation and the Chamber of Commerce of metropolitan St. Louis intervened in support of Speedway's application and introduced evidence on Speedway's behalf. Appellant Associated Transports, Inc., a competing motor carrier, appeared at both hearings as a protestant in opposition to Speedway's application. This cause, as it affects direct financial interests, is essentially a contest between Speedway and Associated. The prize contended for is the business afforded by Chrysler in intrastate transportation of automobiles manufactured at its Valley Park Assembly Plant.

The relative positions occupied by Speedway and Associated in this controversy are unique. Speedway, as an *applicant* for authority, has transported the entire production of Chrysler destined to points in Missouri from Valley Park ever since the plant was established (with the exception of certain deliveries within metropolitan St. Louis). Associated, as a *protestant*, has never transported Chrysler products from Valley Park, although it has certificate authority extending to all points intrastate. It is admitted by Associated that it has not hauled anything for Chrysler Corporation since 1938.

Chrysler formerly operated an assembly plant in Evansville, Indiana. In September, 1959, after closing the Evansville plant, Chrysler constructed an assembly plant near Valley Park, approximately nine miles southwest of the city limits of St. Louis, but located within the commercial zone of St. Louis. The Valley Park assembly plant is devoted to manufacture of Plymouth, Dart and Valiant automobiles. Those products are shipped to various points in Missouri and other states by the driveaway and truckaway method.

When the Valley Park plant began production, (and at the time of the two hearings), Speedway was authorized to transport automobiles and trucks, both in interstate and intrastate commerce. It had previously hauled interstate for Chrysler. Speedway's authority included the right to operate intrastate between *St. Louis* and all points in Missouri. In September, 1959, relying upon the sufficiency of its authority, and at Chrysler's solicitation, Speedway began to transport all Valley Park production for intrastate delivery. Speedway continued that service until the Commission issued its citation order on November 19, 1959, stating that Speedway's certificate authority did not include *the commercial zone* of St. Louis and requiring Speedway to show cause why it has rendered unauthorized service from that area. Speedway complied with the order and ceased hauling directly from Valley Park.

On December 22, 1959, Speedway filed its application with the Commission requesting,

in the alternative, either (1) that the Commission interpret its existing certificate authority as including the right to transport intrastate from Valley Park, or (2) that the Commission issue a certificate of convenience and necessity granting such authority.

Thereafter, Chrysler engaged Cassens Transport Company to deliver the shipments from Valley Park to a terminal in St. Louis. Speedway picked up the cargoes at the terminal and completed the transportation from St. Louis to the designated points in Missouri. At the time of the hearings all of Chrysler's shipments moving intrastate had been so handled since Speedway ceased hauling directly from Valley Park. (Subsequently, in a separate proceeding, the Commission determined that the described two-stage method of moving Valley Park production intrastate was unauthorized.)

Speedway owns and leases a total of 188 tractors and 192 trailers, all in good, serviceable condition. This equipment is shown to be suitable for the transportation of motor vehicles as proposed in the application. The evidence shows that Speedway is financially able to obtain necessary additional equipment and render efficient service to the public under the authority applied for. Speedway maintains terminal facilities immediately adjacent to the Valley Park plant. Speedway's drivers are especially trained and familiar with the methods of tying down, transporting and delivering Chrysler vehicles to the various dealers in Missouri. Speedway has transported all of Valley Park production destined intrastate, to the satisfaction of Chrysler.

Chrysler Corporation's director of traffic was a witness on behalf of Chrysler to support the application of Speedway. He testified that approximately 4,000 to 5,000 people are employed at the Valley Park plant, which has a capacity of 960 vehicles per day. The motor industry is highly competitive. It is essential that when automobiles are produced they must be shipped for fast delivery to the customers. Speedway's service has been very satisfactory to Chrysler.

They have good equipment. Chrysler definitely needs the service of Speedway. Chrysler is entitled to a competitive situation. A choice of carriers helps in the peaks and valleys of manufacturing and gives the manufacturer protection in case of work stoppage by one carrier. Chrysler is entitled to a choice of carriers—as it has in all its other plants. Chrysler has never used Associated's service although Associated has solicited the Valley Park business. The witness for Chrysler stated, "If I had gone and used them (Associated) I would have been locked in with them. I would have never had a chance to get another carrier".

The Chamber of Commerce of metropolitan St. Louis was represented by its commissioner of transportation. The commissioner testified in support of Speedway's application to the following effect: Each of the "Big Three" automobile producers has a plant located in the St. Louis area. The competitive situation among these producers is well known. Chrysler is at a distinct and crippling disadvantage transportation wise because it must rely on only one automobile transporter for its intrastate needs when each of its competitors has at least two carriers upon which to rely. The building of the Chrysler plant at Valley Park has had material effect on the economic life of the community. It has created 4100 new jobs in the St. Louis area, with an estimated annual payroll of $24,000,000.00. It has generated an additional 3,000 jobs of all kinds, increased bank deposits by $11,000,000.00 and retail sales by more than $14,000,000.00 annually. In a situation where a manufacturer is limited to one carrier, any "breakdown" of transportation service, whether from labor trouble or any other reason, would halt the entire plant operation and cause a complete layoff of employees and result in general economic loss. Chrysler Corporation has only one specific carrier authorized to serve intrastate—Associated. Mercury Division of Ford has two such carriers and Chevrolet has three.

S. J. Cento, President of Associated, testified on its behalf essentially as follows:

Associated holds intrastate authority issued in 1936 which permitted it to operate in the trade territory contiguous to St. Louis and from this territory to all points in Missouri. Later, on Associated's application, the Commission held that Associated's authority included the area within 19 miles of St. Louis. Associated owns and leases a total of 356 tractors and 456 trailers. Some of its equipment has been leased from Speedway. This equipment is suitable and adequate for transportation of the Chrysler products made at Valley Park. Associated has solicited this traffic from Chrysler but has never been given any of the business. Associated is primarily a hauler for Ford. The "majority" of its business is transporting Ford products. Associated also hauls some Chevrolet products. Associated owns no tractors manufactured by Chrysler. It has no terminal at Valley Park, but maintains one at Hazelwood, 20 miles from Valley Park. Automobile manufacturers, including Chrysler, desire and request that equipment of their own manufacture be used in transporting their products. Associated owns no trucks manufactured by Chrysler, but uses Ford equipment exclusively. The witness didn't know whether Ford would allow Associated to transport Ford products using other than Ford tractors. He stated, "I don't know; I haven't tried it". He also stated that if Associated is favored with Valley Park traffic, it would buy Dodge trucks and would build a terminal near the Valley Park plant. The authorization of Speedway to serve the Valley Park plant would not entitle it to serve the Ford plant. Such authority in Speedway would not deprive Associated of any Ford traffic. Speedway's right to serve the Valley Park plant would not affect the present service rendered by Associated in any way. It would, however, "deny the additional revenue to be derived from operating at * * * the Chrysler plant". The granting of the application will not lessen Associated's revenue "one iota". The witness admitted that at one time Associated only had authority to operate from St. Louis.

He stated, "If I recall at the time our authority was only from St. Louis, and the fact that the plant was located in the county, we voluntarily went before the Commission to make sure that our authority was correct, and this was the decision of the Commission". The witness admitted that Speedway is doing "the same way" in this case, "to clarify that he does have that (authority) and if in the alternative he doesn't, to grant him a certificate of convenience and necessity". There are peaks and valleys in the transportation of automobiles. Associated's drivers and employees are unionized. In case of strike, and no other carrier was available, Chrysler "might be out of transportation for a matter of hours or so, I don't know; it is hard to say. Depends on the circumstances". Associated's net operating revenue for the first nine months of 1960 was $732,740.00—without any Chrysler business.

United Transports, Incorporated, holds limited certificate authority to transport automobiles from the Chrysler plant at Valley Park only to Kansas City, Missouri. United appeared at the first hearing by its president who testified on its behalf. United has hauled for Chrysler previously. It owns extensive equipment and would like to have Chrysler business at Valley Park.

In its report and order, the Commission made appropriate findings of fact and expressed conclusions, set out as follows:

"From the evidence here, it is obvious that Chrysler Corporation has had a transportation problem in the movement of its automobiles from Valley Park into the State. The necessity here cannot be questioned but the method heretofore employed and the fact that the principal certificated protestant has not been used poses a situation which requires some explanation.

"Chrysler contends that after supporting four applications before this Commission which were denied, an arrangement with Cassens-Speedway was resorted to on advice of counsel and it

has declined to appear in support of further applications until this time. Having, as a matter of policy or precedent, a choice of competitive carriers at its other plants, it hesitates to become bound with any particular transport company lest it be precluded from the choice and convenience of another when and if needed. Furthermore, being one of the 'Big Three' in the industry, it maintains the attitude that it should be entitled to at least the same transportation potential as its competitors in the area.

"The Associated Transports, Inc., has been transporting competitive automobiles since 1938 and this operation now produces the major part of its revenue. This cannot be affected by the traffic originating at the Valley Park Plant but there arises here an opportunity to place it in a competitive position there which could possibly and under circumstances result in new business so far not available to it. At the production rate of this plant, the keen competition in the automotive industry and the automobile plant growth in this area, it appears appropriate to create rather than deny reasonable competition among carriers of vehicles, both for the convenience and necessity of the manufacturers and the public.

\*     \*     \*     \*     \*     \*

"We see no detrimental effect the grant of this application will have on the other protesting carrier. In entertaining these views, we restrict our findings to the Chrysler Corporation Plant at Valley Park.

"We find, therefore, that the public convenience and necessity will be promoted and that there is public need for the creation of the service proposed as hereinafter set out, that the applicant is qualified properly to perform the service proposed and to conform to the requirements, rules and regulations of the Commission".

The Commission's order granted Speedway specific authority to operate as a motor carrier, to all points intrastate, from the Chrysler Plant at Valley Park. Otherwise, Speedway's application was denied.

The respondent Commission urges that this appeal should be dismissed because (1) Associated's brief does not conform with Civil Rule 83.05, V.A.M.R. in that the contained statement of facts is not a "fair and concise statement of the facts without argument"; (2) Associated's brief does not comply with the cited civil rule in that the points and authorities set out therein consist of pure abstract statements of law; and (3) Associated has not filed the appeal cost bond required by Section 386.540 V.A.M.S. Although we find some merit in the Commission's request for dismissal of the appeal, we decline to take such action and elect to determine the cause on its merits.

■ The order of the Commission in this case is prima facie lawful and reasonable. Section 386.270 V.A.M.S.; State ex rel. Egan v. Public Service Comm., Mo.App., 319 S.W.2d 917. In seeking to set aside the determination made by the Commission, Associated has assumed the burden laid upon it by statute to show by clear and satisfactory evidence that the order complained of is unreasonable or unlawful. Section 386.430 V.A.M.S.; State ex rel. Dairyland Transport Corp. v. Public Service Comm., Mo.App., 350 S.W.2d 825; State ex rel. Transport Delivery v. Burton, Mo.App., 317 S.W.2d 661.

■ The issues raised on this appeal are not triable de novo by this court. The only question for our determination, relative to the merits of the case, or that the trial court could have determined, is whether or not the Commission's order is reasonable and lawful and supported by competent and substantial evidence. Section 386.510 V.A. M.S.; State ex rel. Hotel Continental v. Burton, Mo.Sup., 334 S.W.2d 75; State ex rel. Transport Delivery Co. v. Burton, Mo. App., 317 S.W.2d 661. As a reviewing

court, we may not substitute our judgment on the evidence for that of the Commission. "Upon appeal to this court on a matter of this character we do not determine the question presented as though we were the Commission. We only determine whether or not the order made by the Commission is reasonable and lawful, in light of the facts and circumstances properly in evidence before it". State ex rel. Shepherd et al. v. Public Service Commission, Mo.App., 142 S.W.2d 346; State ex rel. Dairyland Transport Corporation v. Public Service Commission, Mo.App., 350 S.W.2d 825.

The Commission is empowered by Section 390.051 V.A.M.S. to issue certificates of convenience and necessity authorizing common carriers to operate on the highways of Missouri. Section 390.051 provides, in part, as follows:

"4. If the commission shall find from the evidence that public convenience and necessity will be promoted, or that there is public need for the creation of the service proposed, or any part thereof, and that the applicant is qualified properly to perform the service proposed and to conform to the provisions of sections 390.011 to 390.176 and the requirements, rules and regulations of the commission established thereunder, a certificate therefor shall be issued.

"5. In determining whether a certificate should be issued the commission shall give reasonable consideration to the transportation service being furnished by any common carrier by rail or motor vehicle and the effect which the proposed transportation service may have upon such carriers; provided, that the issuance of a certificate of convenience and necessity to one carrier shall not prohibit the granting of such certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity will be promoted by so doing".

■ The Commission specifically found (1) that the public convenience and necessity will be promoted and that there is public need for the proposed service; (2) that the applicant is qualified properly to perform the service proposed; (3) and to conform to the requirements, rules and regulations of the Commission; (4) that the granting of the application would have no detrimental effect on the protesting carrier (Associated); and (5) that it is appropriate to create rather than deny reasonable competition among carriers of vehicles. Those findings, in our opinion, are fully supported by competent and substantial evidence. They satisfy the conditions prescribed by the statute and justify the issuance of the order.

■ The real issue in this case is whether the Commission has discretion to permit a competitive motor carrier service when it finds that such service will better serve the public need and convenience than will a monopoly. The answer to this question is found in the decisions of Missouri courts. In State ex rel. City of Sikeston v. Public Service Commission, 336 Mo. 985, 82 S.W.2d 105, the Supreme Court said: "The question of whether regulated monopoly or regulated competition will best serve the public convenience and necessity in a particular area at any time is for the commission to decide, subject to the qualification that the commission must not act arbitrarily or unreasonably, which matter is reserved to be passed upon by the courts". And, in State ex rel. Scofield v. Public Service Commission, 240 Mo.App. 603, 211 S.W.2d 547, this court defined the public policy of this state to be "one of *regulated competition* for the benefit of the public and not one of *regulated monopoly,* in so far as common carriers using the highways are concerned". Since the Commission, in the exercise of its lawful and reasonable discretion, has decided that *regulated competition* will best serve the public convenience and necessity affected in this case, it is not within our province to disturb that decision.

Associated first contends that the Commission erred in granting the application "upon

the basis of improper construction and application of the opinion of the court in State ex rel. Transport Delivery Co. v. Burton et al., Mo.App., 317 S.W.2d 661". That case was cited by the Commission in its report and order. Associated argues that the cited case is not in point because the facts therein are not comparable to those shown in this case. We consider the contention to be without merit. In our opinion the facts found by the Commission to exist in Transport Delivery, and on which the Commission based its grant of authority, are *essentially* analogous to the findings made by the Commission in the present case. The factual findings in Transport Delivery were: "(a) transportation of petroleum products is a specialized field requiring prompt and exact service, (b) that it is preferable for shippers to have a choice of carriers, (c) that more reliable and dependable service can be had if more than one transporter is authorized, (d) that appellant will not lose business it heretofore has had and, (e) that public convenience and necessity will be promoted by granting the authority requested". The very essence of the Transport Delivery opinion is the principle that the Commission is vested with discretionary authority to certificate more than one carrier in a particular area of service.

 Associated's second point is (1) that Speedway did not establish that public convenience and necessity required the additional transportation, and (2) that the Commission failed to give consideration to the service offered by Associated. This point is also without merit. The "necessity" in this case is the need for a choice of carriers—convincingly shown by the evidence. We are not justified in finding that the Commission failed in its statutory duty to reasonably consider the transportation service offered by Associated, in view of the Commission's specific conclusion: "We see no detrimental effect the grant of this application will have on the other protesting carrier".

Associated's final point is that "The departure by respondent from its long and continued interpretation of Section 390.051, supra, is unlawful and an abuse of discretion". This identical assignment was made by the protestant in State ex rel. Transport Delivery Co. v. Burton, supra. In ruling the assignment against the protestant there, we said: "First. Each case must turn on its own particular facts. Second. In situations which might be described as kindred, the Commission has sometimes granted and sometimes refused to authorize an additional carrier and the courts have in many such instances refused to rule either result to be illegal as amounting to an improper exercise of the Commission's expert judgment and discretion in the field of transportation. Third. The ultimate question on review is, was competent and substantial evidence offered which justifies the result reached?" We rule the present point in accordance with our previous decision.

We conclude that the order of the Commission granting the additional authority to Speedway is reasonable and lawful and that the judgment of the circuit court affirming that order should be affirmed. It is so ordered.

All concur.