STATE of Missouri at the Relation of SMOCK TRANSPORTATION COMPANY, Inc., and Farmington Transfer, Inc., Plaintiffs, Appellants,

v.

Tyre W. BURTON, Chairman, William Barton, Frank Iuen, E. L. McClintock, D. D. McDonald, Members of the Public Service Commission of the State of Missouri, Defendants, Respondents.

No. 23732.

Kansas City Court of Appeals. Missouri.

Dec. 2, 1963.

---

Robert L. Hawkins, Jr., Graham & Hawkins, Jefferson City, for appellants.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Counsel, Jefferson City, for respondents.

MAUGHMER, Commissioner.

Smock Transportation Company, Inc. and Farmington Transfer Inc. protestants, appeal from the circuit court judgment which affirmed the order of the Public Service Commission granting an extension of authority to Gordon Hart, d/b/a Gordon Hart Truck Line, a motor vehicle common carrier.

On December 8, 1959, Hart filed the application from which the present controversy arose. At that time he was generally authorized to transport general commodities (a) between Dexter, Bernie and Essex (cities in southeast Missouri) and St. Louis; (b) between Dexter and a 25 mile radius of Dexter to all points in the state, but subject to the restriction that he not render service to points along the regular route of another motor carrier from Poplar Bluff and its trade territory between Charleston and Sikeston and St. Louis. Hart also held *interstate* authority for service between Poplar Bluff and St. Louis over an *interstate* route through the State of Illinois—a route 37 miles longer than the direct intrastate one from Poplar Bluff to St. Louis. Hart maintains terminals at St. Louis, Dexter, Poplar Bluff, Malden and Sikeston.

By his present application Hart sought intrastate authority between St. Louis and its commercial zone and [1] Poplar Bluff over Highway 67; [2] Malden over routes 67, 61 and 25; [3] Bloomfield over routes 61, 67 and 25; [4] Sikeston over routes 61, 67 and 74 and return.

The Commission, after a hearing, entered its conclusions and order in part as follows:

"This application, as disclosed by the evidence, seeks alternate routes intrastate to serve points which are authorized interstate and have been included in the regular course of applicant's transportation. While, in our opinion, the economic phase alone is not sufficient to warrant the granting of this authority, there is a showing that applicant's service to the public may be bettered and convenience and necessity enhanced by granting authority to some points already served without detriment to existing protestant carriers who operate over certain regular routes. The fact that the applicant has maintained terminals at points to be served in this State would further justify this conclusion.

"Therefore, we find from the evidence that the public convenience and necessity will be promoted and there is public need for the creation of a part of the service proposed and the applicant is qualified properly to perform the proposed service and to conform to the provisions of the Statutes, rules and regulations of the Commission established thereunder".

The order then recites that Hart "be and he is hereby granted additional author-

ity to operate over presently authorized intrastate regular routes transporting property as follows: Between St. Louis and its commercial zone, on the one hand, and Dexter, Malden and Poplar Bluff, on the other hand". The application in all other respects was denied.

Appellants sought review by the circuit court of that part of the order which authorized transportation of freight between St. Louis and Poplar Bluff. The circuit court, by its judgment, affirmed the Commission and appellants have appealed on the ground that there was no competent and substantial evidence presented tending to show that public convenience and necessity will be promoted or that there is a public need for the service authorized.

The applicant testified that his terminals were open day and night and that he had been rendering service on a 24 hour per day basis. He said that operating on Highway 67 between Poplar Bluff and St. Louis, rather than over his authorized interstate route through Illinois, would save 37 miles of night driving and expenses of $11.84 per truck per night in operating expenses.

Mr. J. B. Jeffrees, who resides in Poplar Bluff, testified that he operated wholesale grocery businesses in Dexter and Poplar Bluff, but spent all his time in the Dexter enterprise. He stated that the St. Louis wholesalers and suppliers were moving from the city into the county or into what is usually described as the St. Louis commercial area; that both the Dexter and Poplar Bluff stores received daily shipments from that area, that "we get shipments daily from Hart Truck Line whose service we have used and found satisfactory since 1952". On cross-examination this witness admitted that he worked exclusively in the Dexter area and did not have personal knowledge of what other freight service was vailable at Poplar Bluff. He said the business at both places required overnight service from St. Louis.

Mr. Carl E. Roberts testified that he and his father had been engaged in retailing heating and air conditioning supplies in Poplar Bluff for 19 years. He said their business required overnight delivery service from St. Louis; that he used Hart for this purpose and that such service has been satisfactory. He said appellant Smock's delivery service had been used occasionally but that it was not satisfactory, was not as prompt as Hart's and that Smock had lost one of his air-conditioners in transit.

Mr. Burgess A. Lockhart has operated the Pepsi-Cola Bottling Company at Malden for 23 years, and said this business required overnight delivery service from St. Louis, which has been furnished by Hart in a satisfactory manner.

Witness James M. Corder operates a wholesale candy business in Malden. He said he required daily shipments from St. Louis and had used Hart's delivery service and found it satisfactory. He said he had on occasion used "Tucker and Jones" but their deliveries "were 24 hours too late".

Walter L. Smith, principal owner of Smock, and Lloyd Emerson, manager and vice-president of Farmington Transfer, each testified that their companies had sufficient first class equipment to render complete service between St. Louis and Poplar Bluff on a daily basis, that each company can adequately service all customers in the area, including the Roberts Heating and Air Conditioning business, and that the granting of Hart's application as to Poplar Bluff would be detrimental to their business.

It is true, as appellants state, that the only appeal is as to that part of the order allowing Hart to operate between Poplar Bluff and St. Louis. However, Malden, Dexter, Bloomfield, Sikeston and Poplar Bluff are all smaller cities in southeast Missouri and on the same highway routes to St. Louis. The request and permission to serve Poplar Bluff must be considered in connection with the authority Hart already had—intrastate and interstate—in this general area and the additional authority sought in order to see the complete pic-

ture and be thereby enabled to determine if the permit allowing him to use the Poplar Bluff-St. Louis intrastate route was reasonable.

On page 8 of appellants' brief we find this statement: "Fundamentally, appellants' position in this case is that the Public Service Commission's order granting Hart authority to transport freight between St. Louis and Poplar Bluff on intrastate routes is not supported by substantial evidence and that it is therefore arbitrary and capricious".

■ The scope and limitations as to appellate review of an order of the Public Service Commission are quite different from the procedures in the ordinary equitable or nonjury case. The action of the Commission in making the order is not triable de novo, State ex rel. Transport Delivery Co. v. Burton et al., Mo.App., 317 S.W.2d 661, 663. The courts may merely review and determine if the order is supported by competent and substantial evidence, Section 386.510, V.A.M.S. In State ex rel. Alton Transportation Co. v. Public Service Commission of Missouri, Mo., 49 S.W.2d 622, it was held that the power to grant or refuse a certificate of convenience and necessity to supply carrier service is committed within defined limits to the Commission's discretion and not to the courts. This court (State ex rel. Scofield v. Public Service Commission, 240 Mo.App. 603, 211 S.W.2d 547) ruled that priority in the field while an element to be considered is not of itself conclusive as to the granting or refusing a certificate to an intrastate motor common carrier. And our Supreme Court in State ex rel. City of Sikeston v. Public Service Commission of Missouri, 336 Mo. 985, 82 S.W.2d 105, 110, said: "The question of whether regulated monopoly or regulated competition will best serve the public convenience and necessity in a particular area at any time is for the commission to decide, subject to the qualification that the commission must not act arbitrarily or unreasonably, which mat-

ter is reserved to be passed upon by the courts". See also the similar conclusions recently stated by this court in State ex rel. Associated Transports, Inc. v. Burton et al., 356 S.W.2d 115, 119, 120.

Section 390.051(5), V.A.M.S. provides:

"In determining whether a certificate should be issued the commission shall give reasonable consideration to the transportation service being furnished by any common carrier by rail or motor vehicle and the effect which the proposed transportation service may have upon such carriers; provided, that the issuance of a certificate of convenience and necessity to one carrier shall not prohibit the granting of such certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity will be promoted by so doing".

■ Appellants concede that the order here is lawful, that is, the Commission had statutory authority to issue it. The only question before us then is, was the order based upon competent and substantial evidence on the whole record. If it was, then we must affirm. If the whole record contains no competent and substantial evidence on which to base the order, then it is arbitrary and capricious and we may reverse it.

Before the present order was made Hart was serving various cities in southeast Missouri, to St. Louis and return, under *intrastate* authority but not Poplar Bluff. However, for more than ten years he has hauled freight for Mr. Roberts and Mr. Jeffrees from Poplar Bluff to the St. Louis commercial area and return, but under an *interstate* certificate by which he was required to travel a route through Illinois which trip was 37 miles longer than the direct Missouri route, and which quite apparently added to his overhead expenses. Appellants contend that this additional competition between St. Louis and Poplar Bluff over Highway 67 will be detrimental to

their business. In this connection it should be noted that the Commission denied Hart authority to perform transportation services generally along this route.

Appellants, as protestants, invite our attention to the opinions in State ex rel. Missouri, Kansas & Oklahoma Coach Lines v. Public Service Commission, Mo.App., 179 S.W.2d 132; State ex rel. Transport Delivery Co. v. Burton et al., Mo.App., 317 S.W.2d 661, and State ex rel. Associated Transports, Inc. v. Burton et al., Mo.App., 356 S.W.2d 115, as supporting their position for a reversal of the action of the Commission. However, in each of those cases the order of the Commission granting the certificate was approved and affirmed.

In our opinion this case is an uncomfortably close one. Appellants protest that the granting of such authority to Hart between Poplar Bluff and St. Louis will be detrimental to their business. Since Hart was denied authority along the direct route from Poplar Bluff to St. Louis, since he was already serving from Poplar Bluff to St. Louis and return, even though interstate through Illinois, rather than direct along the intrastate route, and since he has for many years been serving his Poplar Bluff customers, we find it difficult to conclude that appellants' business will be materially damaged by this order.

Under the record here, the heating, plumbing and air conditioning business of Mr. Carl E. Roberts in Poplar Bluff, which requires daily freight service to and from St. Louis, has used the Hart line since 1952. A business of this size requiring daily deliveries in order to supply its customers promptly and adequately, it is a business which affects at least a segment of the public living in the area. Any impairment of its regular, prompt and efficient delivery service from its St. Louis suppliers could reasonably, we think, be determined to be detrimental to the public convenience and necessity. Any improvement of that service or any order maintaining the present high standards (which Roberts said Hart

had been furnishing) could, we think, reasonably be said to be in the furtherance or maintenance of the public convenience and necessity. There was also somewhat similar testimony from Mr. Jeffrees regarding his furniture stores in Dexter and Poplar Bluff, although he was only personally and intimately familiar with the situation in Dexter.

Does this evidence show that the public convenience and necessity calls for the issuance of the certificate to Hart? If we were charged with the responsibility of answering that question initially—if we were trying the case de novo—we might have difficulty in ruling that it reasonably requires approval of Hart's application. However, we think that the evidence offered was both substantial and credible on the issue.

There is a further material condition here which does not usually, we presume, exist. We refer to the fact that Hart is already transporting freight to and from Poplar Bluff and St. Louis but over the interstate Illinois route. This route is 37 miles longer than the intrastate route would be and this, of course, adds to his overhead costs. In the exercise of its management control over the routes of motor freight carriers, it is reasonable for the Commission to eliminate such unnecessary costs if possible, and to permit travel along the shortest route. That is actually what the Commission has done here. The order really does not enlarge Hart's "trade area" insofar as Poplar Bluff and intrastate route 67 to St. Louis is concerned, but rather permits him to continue serving his present customers and any others which he may secure in the future, over the shorter and quicker intrastate route instead of requiring him to continue the longer interstate route from Poplar Bluff through Illinois to St. Louis. We believe this is a factor which the Commission had a right to consider and which weighs in support of the reasonableness of the order.

As stated above, this is an uncomfortably close case. It may be one so close that

the exercised discretion of the Commission would tip the balance either way. We hold there is some substantial and credible evidence that the granting of the certificate here to Hart will better his service to the public, and that the public convenience and necessity will be enhanced thereby. We observe again that his already holding an interstate certificate to transport freight from Poplar Bluff to St. Louis adds to the reasonableness of this order to transport intrastate between the same cities.

The Public Service Commission was created by the Legislature to serve as a body of experts within its fields. It is familiar with the over-all transportation picture in the area. It must exercise management and control over routes and authorizations. We are unable to rule that by making the order here the Commission has abused its discretion, acted arbitrarily or capriciously, or that the judgment is unsupported by substantial and credible evidence.

Therefore, the judgment of the circuit court affirming the order of the Commission is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.