STATE ex rel. TWEHOUS EXCAVATING COMPANY, INC., a corporation, et al., Relators,

v.

PUBLIC SERVICE COMMISSION, STATE OF MISSOURI, Respondent,

and

Nip Kelley Equipment Company, Inc., Intervenor.

No. WD 31660.

Missouri Court of Appeals, Western District.

May 19, 1981.

James C. Swearengen, Jefferson City, for relators.

Kent Michael Ragsdale, Jefferson City, for respondent.

Bernard Peter McDonnell, Jr., St. Louis, for intervenor.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

KENNEDY, Presiding Judge.

This is an appeal by Nip Kelley Equipment Company from the judgment of the circuit court reversing an order of the Public Service Commission which had granted to it certain authority to operate as a common carrier over irregular routes in intrastate commerce. We find that the order of the Public Service Commission was supported by competent and substantial evidence and we therefore reverse the judgment of the circuit court and reinstate the order of the Commission.

The authority granted was to operate as a common carrier by motor vehicle in the transportation of heavy equipment, machinery and commodities, which, due to size or weight, or both, require the use of specialized equipment and/or specialized handling, or both, to load or unload, over irregular routes, between all points in Bollinger, Cape Girardeau, Mississippi, Perry, Scott and Stoddard Counties, Missouri, and between all points in that area, on the one hand, and on the other hand all points in Missouri, with the following exceptions: No service was authorized to points in Missouri lying north of Highway 54 and west of Highway 63, roughly the northwest quadrant of the state; the authority was restricted against any traffic originating in New Madrid County; and no service should be rendered that originated or terminated in St. Louis or its commercial zone.

Applicant Kelley was situated in Cape Girardeau. The application was made in the name of "Claude Kelley, III, d/b/a Nip Kelley Trucking Company". Later Nip Kelley Equipment Company, Inc., was substituted.

The application was filed September 17, 1976, after Kelley was advised by Commission representatives that his heavy-hauling operations without Commission authority were unlawful. A hearing was held on

November 15, 1976, and on March 3 and 4, 1977. The Commission denied the authority by order of September 20, 1977, but granted a rehearing. The matter was heard a second time on March 29 and 30, 1978. The kind of authority requested here and granted by the Commission was to transport heavy or large objects, over irregular routes. Mentioned in evidence were heavy machinery and equipment, and large concrete sewer pipe. Users of the service are contractors, manufacturers and sellers of equipment and machinery, and fabricators of the concrete sewer pipe. The special equipment mentioned in evidence were lowboys and flatbed trailers, to be pulled by tractors. Kelley had two flatbed trailers and two lowboys, and two tractors that could be used in the heavy-hauling business. Kelley already held authority for dump truck operations, and was engaged in other related businesses.

The protestants were various holders of heavy-hauling authority. They included the respondents who are represented in this court, namely: Twehous Excavating Company, Inc., Wayne Helderman Trucking Company, Daniel Hamm Drayage Company, Inc., Aalco Express Company, Inc., and W. L. Waggoner Trucking Company, Inc.

The applicant asserts upon this appeal, and the protestants deny, that the Commission's order granting the authority was supported by competent and substantial evidence. It is that question which is before us for resolution.

The statutory criteria governing the issuance of a certificate of public convenience and necessity authorizing the transportation service proposed to be furnished by the applicant are found in § 390.051, RSMo 1978. In order to grant the authority the Commission must have found from the evidence that "public convenience and necessity will be promoted or that there is a public need for the creation of the service proposed; that the applicant is qualified properly to perform the service proposed and to conform to the provisions of §§ 390.011 to 390.176 and the requirements, rules and regulations of the Commission established

thereunder". The Commission is enjoined to give "reasonable consideration to the transportation service being furnished by any common carrier by rail or motor vehicle and the effect which the proposed transportation service may have upon such carriers". Sec. 390.051.6. The protestants' main attack is at the point of "public convenience and necessity" requiring the proposed service. Protestants argue that their service is adequate to meet the public need.

I. *Public need; public convenience and necessity.*

The cases which have construed "public need" and "public convenience and necessity" have stated the matter in a variety of ways, but they are agreed that the "need" for the service is not a strict need or strict necessity, and on the other hand the authorization of the service may not be based upon the mere convenience of its prospective users. If the granting of the authorization subserves a genuine and reasonable public interest in promptness and economy of service, then the public "convenience and necessity" or "public need" is served. *State ex rel. Beaufort Transport Co. v. Clark,* 504 S.W.2d 216, 219 (Mo.App. 1973); *State ex rel. National Trailer Con., Inc. v. Public Serv. Comm.,* 488 S.W.2d 942, 945 (Mo.App.1972); *State v. Burton,* 374 S.W.2d 639, 643 (Mo.App.1963). The effect upon other common carriers is to be considered by the Commission, but an adverse effect upon them yields to a public need for the service. *State ex rel. Churchill Trk. Lines v. Pub. Ser. Com.,* 555 S.W.2d 328, 335 (Mo.App.1977). Neither the circuit court nor we—the scope of our respective reviews is the same—are to overturn the Commission's decision if it is "lawful and reasonable", §§ 386.510, 386.540, RSMo 1978. The "lawfulness" of the Commission's decision is admitted here, and its "reasonableness" is at issue. The resolution of that question depends in turn upon whether the decision rested upon competent and substantial evidence. *State ex rel. Util. Consumers Council, etc., v. Public Service,* 585 S.W.2d 41, 47 (Mo. banc 1979).

■ The Commission could reasonably conclude from the evidence before it that users and prospective users of the services applicant Kelley proposed to furnish, reasonably required more prompt service than existing carriers were furnishing, at more economical rates, and that applicant was qualified to, and would, supply the need.

There were only two of the protesting carriers with facilities in the Cape Girardeau area. One was protestant Twehous Excavating Company, which during the week of the second hearing had entered into a one-year lease for a facility at Sikeston, Missouri, and on the day before the hearing had located one lowboy at that location. The principal Twehous facility was located four and a half miles east of Jefferson City, Missouri, a distance of about 210 miles from Cape Girardeau. Mr. Twehous of Twehous Excavating Company said that their reason for establishing the Sikeston facility was to service southeast Missouri calls, and also because it had been requested to do so by Fabick Tractor Company located at Sikeston. Fabick Tractor Company had been a customer of Twehous since 1968. The testimony would allow the construction that the Fabick Tractor Company business was a primary consideration in the location of the Twehous facility at Sikeston.

Until very shortly before the second hearing, Twehous had done scarcely any solicitation of business in the Cape Girardeau area. Its solicitation of business had been principally in towns nearer their equipment in Jefferson City. They were not listed in the Cape Girardeau yellow pages.

Twehous charged deadhead rates of 53 cents per mile.

Twehous had made frequent trips to Cape Girardeau but mostly from the St. Louis and Jefferson City areas. The authority granted to applicant Kelley in the present case would not overlap those trips, for Kelley was excluded from the St. Louis zone and from points north of Highway 54 and west of Highway 63. The Twehous trucks would usually return empty from Cape Girardeau.

Mr. Baches, transportation manager for Twehous, testified that there was sufficient traffic in the area for Twehous, for Helderman and Kelley, all three.

The other hauler with a local facility was Mr. Wayne Helderman, who had acquired his authority from Heuer Trucking Company after the November 1976 hearing and before the March 1977 hearing. His facility was located at Whitewater, a distance of 10 miles from Cape Girardeau. Mr. Helderman had only one lowboy (but had access to others) and had no flatbed trailer. He had had only one haul since he had acquired his authority from Mr. Heuer. His principal trucking business was the transportation of livestock and farm products on interstate routes.

The witnesses presented by the applicant testified generally of the need for additional heavy-hauling service. Their complaint about existing service was primarily that it was not available when needed, and second that it was unnecessarily expensive because of the payment of deadhead rates.

William Walker testified that for 15 years he has been in the business of landfill operations, custom work, dismantling, repairing and moving heavy machinery. His place of business is at Marble Hill, 30 miles west of Cape Girardeau. In years past, especially between 1966 and 1972 he tried to have Heuer Trucking Company (predecessor to Helderman) move equipment for him, but could never reach him. He therefore turned to Kelley and borrowed trucks from others. Walker would have 15 or 20 moves to make each year, and more if he could guarantee that he could get reliable hauling. Sometimes he must turn down other jobs for lack of transport, and therefore he estimates a greater number of jobs if a hauler were available. St. Louis carriers are too inconvenient and too costly and so are those with terminals in Jefferson City. Time is very important in Walker's business. If he has to wait for a hauler he is paying rent on his equipment during the waiting time. He is less concerned with costs than with getting hauling done quickly and on short notice. He moves equip-

ment frequently and at times needs three or four lowboys at the same time. Walker had learned of Helderman's existence only the day before the hearing. He said he has as many as three or four lowboys on the road at one time and even if Helderman should prove reliable, he has only one lowboy. Walker said he felt it would be best if both Helderman and applicant Kelley had authority.

Bill Fraser was the branch manager of Missouri-Illinois Tractor Company. He had used Kelley's services—although unauthorized by the Commission—for 50 or 60 loads in the first 10 or 11 months of 1976. Fraser was unaware of the existence of Heuer Trucking Company. In contending for authorization for Kelley, Fraser emphasized the deadhead charges of St. Louis based and Jefferson City based haulers, and the inconvenience of having haulers located at a distance. Fraser testified: "... (I)n our type of business, construction equipment, new sales, equipment rentals, customer machines, primarily when we need to move equipment, we need to move lots of it; and, most generally, when we need to move it, we need to move it now..."

At the time of the second hearing in March of 1977, Fraser testified that during the interim between the November 1976 hearing and the March 1977 hearing they had used the Heuer Trucking Company for some moves and the service was good. Fraser said that Helderman was actively seeking Missouri-Illinois Tractor's business, but he said there was a definite need for two heavy haulers in the Cape Girardeau area.

Fraser said that three days before the second hearing a representative of Twehous had solicited his business, but there had been no earlier solicitation by Twehous.

Other witnesses presented by the applicant were less frequent users of heavy-hauling services, but the testimony of each supported in one degree or another the need for more prompt heavy-hauling service without deadhead expense.

The testimony presented by the protestants emphasized the availability of heavy-hauling service furnished by themselves and others. Daniel Hamm Drayage Company, Inc., has a terminal in New Madrid County about 50 miles from Cape Girardeau. The authority granted by the Commission to applicant Kelley does not allow transportation to or originating in New Madrid County, so Hamm as a practical matter is unaffected by the grant of authority.

Waggoner Trucking Company is an Illinois firm with a Missouri certificate, which sometimes does work for Missouri-Illinois Tractor Company. It is located across the river from St. Louis, and has deadhead and minimum charges.

Aalco is located in St. Louis County and has a state-wide certificate. It takes three and a half hours for Aalco to get a truck to southeastern Missouri. It has an 80-mile minimum charge on a load and 50 cents per mile deadhead charges.

Southhampton Hauling is another St. Louis firm. In addition to its distance from Cape Girardeau and its deadhead charges, the Southhampton drivers will not load or unload equipment. Less than five percent of its business involves southeastern Missouri.

Neither Waggoner Trucking Company, Aalco or Southhampton Hauling will be much affected by the grant of authority to Kelley, since the authority granted to Kelley does not permit Kelley to transport goods originating in or going to St. Louis or its commercial area.

## II. Prior violations of law and regulations by applicant.

The protestants claim next that the Commission was in error in granting the applicant's authority because of the applicant's history of hauling for hire without the authority. This, the protestants claim, disqualified the applicant from receiving the authority. In its first order in the case, dated September 20, 1977, the Commission had denied the applicant's authority on that very ground, a decision which the protestants applaud.

The evidence discloses that the applicant Kelley had hauled equipment without Com-

mission authority from 1972 through the time of the first hearing in November, 1976. In July, 1976, Commission representatives advised Kelley that he needed Commission authority to conduct heavy-hauling operations. Kelley thereupon filed his application for Commission authority, but continued to operate the heavy-hauling operation. At the conclusion of the first hearing of the application, November 15, 1976, Commissioner Charles J. Fain, who presided, admonished Kelley not to make any further illegal hauls. When the hearing resumed on March 3, 1977, it was disclosed that he had in the interim made some illegal hauls. After the March 1977 hearing, there was a lease arrangement with Inman Motor Freight, Inc., whereby Kelley would lease his equipment to Inman and Inman, at least nominally, would perform the hauling. Even during that period, however, some of the trips were performed without the intervention of the lessee.

The Commission in its order took note of the violations. It noted that Kelley had not solicited the unauthorized traffic, but that local shippers called on him because they needed service and the existing carriers were not doing an adequate job of providing it. It further noted that Kelley's dump truck operation, operated under Commission authority, operated in conformity to law. Except for the heavy hauling done without authority, there was no evidence that Kelley had failed to observe the law and regulations of the Commission.

The applicant's past violations of law and of the Commission's regulation are to be considered by the Commission only as an indication whether he will abide by the law and regulation under the authority applied for. *State ex rel. Inman Freight v. Public Serv.,* 600 S.W.2d 650, 655 (Mo.App. 1980). Authority is not to be withheld from an applicant as a punishment for past violations. Kelley's hauling without Public Service Commission authority was a misdemeanor, punishable by a fine or imprisonment, §§ 390.171, 386.580, RSMo 1978. The Commission expressly considered the past violations in assessing the likelihood that Kelley would obey the law and regulations if the authority he sought was granted. The assessment of this evidence of past violations, and its reliability as an indicator of the applicant's obedience to the laws and regulations, were matters peculiarly within the Commission's realm and we will not upon that point reverse its decision upon appeal. *State ex rel. Inman Freight v. Public Serv., supra.*

III. *Adverse effect upon other carriers.*

Finally the protestants say that the evidence did not show that the establishment of the service by Kelley would not adversely affect existing carriers. It should first be pointed out that any adverse effect upon existing carriers is by the terms of the statute, subordinate to the public convenience and necessity. Sec. 390.051.6, RSMo 1978. Secondly, there was ample direct evidence that there was sufficient traffic that none of the carriers would suffer adverse effects from the granting of Kelley's authority.

The judgment of the circuit court is reversed. Commission's order granting the authority is reinstated.

All concur.