KENNETH COFFELT *v.* ARKANSAS POWER & LIGHT COMPANY

5-5192            451 S. W. 2d 881

Opinion delivered March 23, 1970
[Rehearing denied April 27, 1970.]

*Kenneth Coffelt,* pro se.

*House, Holmes & Jewell;* By: *Darrell Dover,* for appellee.

GEORGE ROSE SMITH, Justice. This suit for a declaratory judgment was brought as a class action by the appellant, who seeks relief on behalf of all consumers who purchase electricity from the appellee, a public utility. The question presented is whether our constitu-

314

tional prohibition against usury is violated by the utility company's authorized practice of imposing a "late charge" against customers who do not pay their monthly bills within ten business days (fourteen calendar days) after the due date. This appeal is from a summary judgment upholding the validity of the late charge and dismissing the complaint for want of equity.

The complaint asserts that the imposition of the late charge amounts to the exaction of usurious interest upon the net amount of the bill. By answer the utility company denied the assertion of usury. We take the controlling facts from the affidavit and exhibits accompanying the defendant's motion for summary judgment.

In 1968 the utility company filed a petition asking the Public Service Commission to approve a tariff entitled "Gross-Net Billing Rider," which was apparently the first attempt by this particular company to add a late charge to its bills. (We use the phrase "late charge" merely for convenience. The practice has also been said to involve a discount for prompt payment, a penalty for tardy payment, a gross-net rate differential, and, at least by this appellant, usurious interest. We are interested not in nomenclature but in the substantive nature of the charge.) Interventions were filed protesting approval of the proposed charge.

At a hearing upon the petition the company offered proof from which the Commission found that the company's extra expense in the collection of overdue accounts had amounted, apparently in 1968, to $610,629. The Commission, to enable the company to recoup such expenses from the consumers who were responsible therefor, authorized the imposition of a late charge amounting to 8% of the first $15.00 of the net bill and 2% of any amount in excess of $15.00. The Commission's announced purpose was to avoid discrimination as between the company's consumers. The Commission's reasoning was stated in its order, as follows:

The genesis of such a penalty [late charge] is the strong policy of rate regulation against discrimination. Rates and other charges must be designed as nearly as possible to assess costs on the class of customers which creates them. In this case the application of this policy to the question before the Commission means that costs created by late paying customers should be borne by those very customers rather than distributed in the rates charged all consumers. The other side of the proposition is that if the penalty is excessive as compared to the costs created, then the late payers are bearing costs of company operation not properly attributable to them. In the latter instance this class becomes the class discriminated against.

The Company has conclusively demonstrated that it is put to considerable expense in collecting past due accounts. . . . It cannot be gainsaid that those consumers who are responsible for these expenses to the Company should pay them. It is noteworthy that those customers who in the past have not paid their bills within two weeks of billing date include persons in all income brackets and are in no way confined to those who are in the lower income groups.

In approving the proposed late charge the Commission pointed out that the company's accounting methods had not been designed to completely isolate its collection costs, because no late charge had been imposed in the past. The Commission directed that the company maintain appropriate records in the future to reflect such costs and to file a report of its experience every sixty days, to the end that the Commission may adjust the amount of the late charge to equal the actual cost of collecting overdue accounts.

With respect to the summary judgment, the foregoing facts are undisputed. We should add that the appellant is mistaken in suggesting in his brief that the facts supporting the motion for summary judgment

must be treated as being disputed by the plaintiff's verified complaint. That view was originally taken by some federal courts in construing the Federal Rules of Civil Procedure, but both the Rules and our summary judgment act have been amended to make it clear that proof must be met with proof. This is the pertinent language in Act 160 of 1967: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Ark. Stat. Ann. § 29-211 (e) (Supp. 1969). Inasmuch as the plaintiff in the case at bar filed no response whatever to the defendant's motion for summary judgment, the facts established by that motion stand undisputed.

The trial court was right in rejecting the charge of usury. What we must determine is the substantive nature of the late charge authorized by the Public Service Commission. Usury involves an agreement by which the borrower is required to pay an excessive rate of interest for the loan or forbearance of money. *Armstrong* v. *McCluskey*, 188 Ark. 406, 65 S. W. 2d 558 (1933). There we went on to point out that the existence of usury is to be determined by "the real nature of the transaction.'

We think it plain that the Public Service Commission, in approving a late charge similar to those which the Commission found to be already assessed by some 32 other utility companies in Arkansas, was not authorizing this appellee to collect excessive interest for the loan or forbearance of money. We readily distinguish this case from the only authority cited by the appellant, *Sloan* v. *Sears, Roebuck & Co.*, 228 Ark. 464, 308 S. W. 2d 802 (1957). There the seller was charging more than 10% per annum for an extension of credit, which we found to be the equivalent of a loan of money.

The late charge, as approved by the Public Service Commission, is simply a practical method of preventing discrimination among the utility company's customers. The prohibition against discrimination in utility rates is basic in public utility law. Pond, Public Utilities, § 270 (4th ed., 1932). That prohibition is incorporated in our statute governing public utilities: "No public utility shall, as to rates or services, make or grant any unreasonable preference or advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage." Ark. Stat. Ann. § 73-207 (Repl. 1957). Even before the passage of that statute we had held that a public utility must serve its consumers without unjust discrimination, though the utility may make a reasonable classification of its consumers. *Ark. Natural Gas Co. v. Norton Co.,* 165 Ark. 172, 263 S. W. 775 (1924).

The late charge, far from being an exaction of excessive interest for the loan or forbearance of money, is in fact a device by which consumers are automatically classified to avoid discrimination. Its effect is to require delinquent ratepayers to bear, as nearly as can be determined, the exact collection costs that result from their tardiness in paying their bills. The appellant's argument actually means in substance not that the utility company be prevented from collecting excessive interest but that its customers who pay their bills promptly be penalized by sharing the burden of collection costs not of their making. We are confident that the framers of the Constitution of 1874 did not insert their prohibition against usury with any notion of outlawing an arrangement such as that approved by the Public Service Commission in this instance.

Affirmed.