## COMMERCIAL PRINTING CO., INC. *v.*
## ARKANSAS POWER AND LIGHT COMPANY
## AND ARKANSAS PUBLIC SERVICE COMMISSION

5-5468 466 S. W. 2d 261

### Opinion delivered April 19, 1971
[Rehearing denied May 24, 1971.]

*Darrell Hickman,* for appellant.

*House, Holmes & Jewell* and *Benjamin C. McMinn,* for appellees.

CARLETON HARRIS, Chief Justice. In November, 1968, the Arkansas Power and Light Company, an appellee herein, filed with the Public Service Commission, in accordance with the provisions of Ark. Stat. Ann. § 73-217-18 (Repl. 1957) for approval of a new rate schedule entitled "Gross-Net Billing Rider Rate Schedule M15", the new schedule to become effective on December 31, 1968. Pursuant to law, the effective date of this rate schedule was suspended by order of the Commission. Upon filing the rate schedule, notice was given by having a copy served on the elected officials of every

municipality in Arkansas in which appellee operated. Thereafter, two separate groups of consumers intervened, attacking the terms, conditions, and provisions of the rate schedule. In January and February of 1969, the Commission conducted hearings in which testimony was taken, with full participation of the commission staff and representatives of the interveners. An order was entered on May 9, 1969, in which the schedule, with certain modifications, was approved. Following approval by the commission, Rate Schedule Rider M15 was applied to billings of the company. No consumer interveners petitioned for judicial review, and the time for review expired. Briefly stated, the order permitted the company, when a customer had not paid his bill within ten business days from the time of billing, to add an amount equal to 8% of the first $15.00 of the bill, plus 2% of the net bill amount in excess of $15.00.

On November 14, 1969, appellant, Commercial Printing Company, Inc., instituted suit in the Pulaski County Circuit Court against appellee and the Public Service Commission, wherein appellant stated that it had followed a practice of paying its bills on or before the tenth day of each month but that as a result of Rate Schedule M15, appellant found itself in the position of being a delinquent consumer; that the application of the penalty was discriminatory against appellant and other consumers, and was unreasonable and exorbitant. It was also alleged that the penalty was usurious. The prayer of the complaint was that the penalty be declared null and void; that a restraining order be issued prohibiting the enforcement of the said penalty and that appellee company be restrained from disconnecting utility service to appellant. The complaint was subsequently amended to allege that the suit was brought as a class action by appellant on its behalf and that of the rest of the customers who were affected by the order. Arkansas Power and Light Company answered, denying that the provisions of Rate Schedule M15 were discriminatory, unreasonable, exorbitant, or usurious; asserting that the order of the Commission was final and conclusive, there having been no petition for court review; further, that the complaint constituted a collateral at-

tack on the orders of the commission and it was prayed that the complaint be dismissed. The company also counterclaimed for the amount which it contended Commercial Printing Company, Inc. owed to it. The Public Service Commission answered, asserting that consideration and determination of the procedures of billing set out in Rate Schedule M15 were matters solely within its jurisdiction, subject only to judicial review, and that no judicial review having been sought, the order had become final. Subsequently, Arkansas Power and Light Company amended its answer to assert that the cause of action was barred by *res judicata* under the Supreme Court decision in the case of *Coffelt* v. *Arkansas Power and Light Company,* 248 Ark. 313, 451 S. W. 2d 881. After the filing of motions by appellant for the commission to be required to file certain records, and power and light company to answer certain interrogatories, appellees moved for summary judgment, supporting said motion with affidavits and exhibits. These included a certified copy of the order of the Public Service Commission approving Rate Schedule M15, dated May 9, 1969, and an order of the Public Service Commission dated June 2, 1969, wherein a petition for review and reconsideration filed by intervener Odell Smith for himself and as representative of a class of persons was denied, and Smith's notice of appeal noted. Further exhibits included a complaint filed in the Chancery Court of Pulaski County as a class action by Kenneth Coffelt, individually, and as a citizen and tax payer of the State of Arkansas, the answer of the Arkansas Power and Light Company to such complaint, the order of the Chancery Court granting a motion for summary judgment in the case of *Coffelt* v. *Arkansas Power and Light Company supra,* and a copy of the opinion of the Arkansas Supreme Court affirming the decision of the Pulaski County Chancery Court in that case. The motion was further supported by the affidavit of O. V. Holeman, Manager of Rates and Research of Arkansas Power and Light, which set out that upon the filing of the aforementioned rate schedule with the Arkansas Public Service Commission, copies of the rate schedule and notice of the filing had been filed with city officials of each of the incorporated municipalities

in which appellee company provided service. The affidavit incorporated the contents of Rate Schedule M15, and further recited that on December 26, 1968, an intervention was filed by a group of interested consumers in which they objected to the rate schedule; that it was suspended to prevent its becoming effective pending hearings which were subsequently conducted, following a second intervention by an additional group of consumers; that following the approval of the rate schedule by the Public Service Commission, no petition for review of this order was filed with the commission or with the Circuit Court of Pulaski County by any party. The affidavit of the assistant treasurer of the company was simply that appellant had been billed in accordance with the schedule, had not made payment, and was indebted to the company in the amount of $124.58. Counter-affidavits, or exhibits, were not filed by appellant, but it did file an unverified response reiterating that summary judgment should be denied because the order was discriminatory against appellant and the class of consumers represented, and it stated that *res judicata* could not be relied upon because of *Coffelt* v. *Arkansas Power and Light Company supra,* that case being heard entirely on the issue of usury and not on the issue of discrimination. The court granted the motion for summary judgment, finding that the commission was the agency invested by law with the authority to hear matters pertaining to the issues raised by appellant, and that appellant was afforded an adequate, complete and expeditious remedy at law under the statutes authorizing appeals from orders of the commission for judicial review. The court found that there was no genuine issue as to any material fact, and granted the summary judgment, dismissing the complaint.[1] From the judgment so entered, appellant brings this appeal. For reversal, it is simply urged that "The lower court was the proper forum to adjudicate the illegal and unlawful order of the Public Service Commission".

---

[1]The court also held that the motion of appellant to require the commission to file certain records and for the power and light company to answer certain interrogatories "are therefore moot". The counter-claim of the power and light company was also dismissed without prejudice to the company for recovery of any sums due it by appellant under the appellee's approved rate schedule.

Appellant commences its brief with an erroneous premise. From appellant's brief:

"It must be assumed that all of the allegations of the complaint and the amended complaint are true. The lower Court granted motions for summary judgment filed by both defendants and found that there was no genuine issue as to any material fact.

It cannot be denied, for purposes of review, that the order in question is discriminatory, illegal and unjust. It must be admitted, for the purposes of review, that these facts are not in dispute. Therefore, we consider this matter on appeal on the basis of the cause of action stated in the complaint and the amended complaint in light of the laws of the State of Arkansas."

We do not treat motions for summary judgment in the same manner as a demurrer. It is true that when a demurrer is filed, the allegations of the complaint are treated as true for the purpose of testing the sufficiency of the complaint in stating a cause of action. But this is not true where a motion for summary judgment is supported by affidavits and other exhibits. In *Coffelt* v. *Arkansas Power and Light Company supra,* we said:

"We should add that the appellant is mistaken in suggesting in his brief that the facts supporting the motion for summary judgment must be treated as being disputed by the plaintiff's verified complaint. That view was originally taken by some federal courts in construing the Federal Rules of Civil Procedure, but both the Rules and our summary judgment act have been amended to make it clear that proof must be met with proof. This is the pertinent language in Act 160 of 1967: 'When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.' Ark. Stat. Ann. § 29-211 (e) (Supp. 1969). Inasmuch as the plaintiff in the case at bar filed no response whatever to the defendant's

motion for summary judgment, the facts established by that motion stand undisputed."

No specific reason whatsoever is set forth why the order is discriminatory, but at any rate, the matters complained of are clearly rate making functions. Were the court to have complied with the prayer to determine the issue urged in appellant's complaint, it would have been necessary to originally determine all of the issues and questions which arise at a rate hearing, functions which are certainly legislative and administrative in nature. As pointed out in the brief filed by the Arkansas Power and Light Company, what would have been the final result if the court had denied the motion for summary judgment, found that *res judicata* did not apply, and that the court had jurisdiction to hear the facts which appellant contends would have disclosed discrimination? Let us assume that the court heard the evidence and found that the rate schedule operated in a manner to discriminate against appellant. Would the court then have redesigned the schedule, added new terms, or taken away some of its provisions? If so, it is clear that it would have been engaged in what the General Assembly has declared to be a legislative function, *i. e.*, the regulation of rates of a public utility. If, in fact a court is empowered to take such action, what then is the need for the Arkansas Public Service Commission, and its group of experts? The only other action the court could have taken would have been to refer the matter back to the Public Service Commission for further consideration. The effect of such action would result in appellant being given a judicial review several months subsequent to the legal ·time limit provided in Ark. Stat. Ann. § 73-233 (Repl. 1957). While apparently a notice of appeal was given by one of the interveners, the matter was not pursued. To allow the procedure contended for by appellant would be to repeal the statutory provision for court review of the Public Service Commission orders; the appeal provisions would simply, in effect, be stricken from the statute.

In *Southwestern Gas & Electric Co.* v. *City of Hatfield,* 219 Ark. 515, 243 S. W. 2d 378, we said:

"Orderly procedure and administrative efficiency demand that the regulatory body be vested with authority to make *preliminary determination of legal questions* (our emphasis) which are incidental and necessary to the final legislative act. Otherwise endless confusion would result because different phases of the same case might be pending before the Commission and the courts at one time."

This does not mean that no adequate remedy at law is provided. In *McGehee* v. *Mid South Gas Co.,* 235 Ark. 50, 357 S. W. 2d 282, we squarely held that the procedures (mentioned in the sections already referred to) provide an adequate remedy at law. The background of that case is as follows: Mid South Gas Company and Arkansas Louisiana Gas Company entered into an agreement by the terms of which Arkla would issue a certain number of shares of its common stock to Mid South and would assume the debts and obligations of Mid South, all in exchange for the properties and assets of Mid South as a going concern. Since both of these companies were public utilities, the agreement was subject to the approval of the Public Service Commission, and the two companies filed their joint application for approval of the plan, the commission setting the matter for hearing. McGehee was a stockholder in Mid South and filed a complaint in the Pulaski Chancery Court against that company, its officers and directors, alleging in his complaint that it was a class suit in his behalf and that of others similarly situated, and that, without notice to the stockholders, the officers and directors of Mid South had entered into the agreement with Arkla. He then set out several reasons why he considered the agreement to be illegal and void and prayed that Mid South, its officers and directors, be restrained from further proceeding in the agreement with Arkla. On the same day that McGehee filed his suit in Chancery Court, he also filed before the Public Service Commission a motion for continuance, advising the commission of his chancery suit and praying that the commission delay any action with regard to approval of the plan until the chancery case could be heard and decided. He also filed a response and objection to the

proceedings, presenting the same questions that he had raised in the chancery court.

The Public Service Commission overruled his motion for continuance, denied the objections and response of McGehee, and approved in every respect the agreement. Thereafter, Mid South filed a motion in the Chancery Court to dismiss McGehee's complaint, setting out *inter alia* that the same questions were being presented in the chancery case that had been presented before the commission; that McGehee could appeal the adverse ruling by the commission, and that such remedy at law by appeal was adequate and complete. McGehee responded, claiming that the Public Service Commission was without jurisdiction to hear the matter; that his rights of appeal from the commission's ruling were not adequate and complete; that the commission was merely an administrative tribunal and had no authority to adjudicate the questions raised in the chancery court. The chancellor sustained the motion to dismiss and McGehee appealed to this court.

In a comprehensive opinion, this court mentioned several of our prior holdings, and then stated:

"In these four cases—and others could be cited to the same effect—we have held that the Commission in the first instance and the courts on appeal could consider such matters as each of the five points of attack made by McGehee in the case at bar. It thus follows that McGehee's remedy through the proceedings before the Commission and on appeal, was full, adequate and complete in that he could urge every point that he alleged in the Chancery Court. That his remedy through the Commission's proceedings was expeditious is shown by the fact that the Commission's Order was made on July 5, 1961, affirmed by the Circuit Court on September 25, 1961, and an appeal to this Court was dismissed on February 19, 1962, because McGehee had not pursued his appeal expeditiously and within the time prescribed by law. The fact that McGehee lost his appeal to this court—questioning the Public Service Commission's Order—by failing to prosecute it in due time,

does not reinstate equity jurisdiction, because where a legal remedy has been lost, through failure to seek it at the proper time, equity will not for that fault entertain jurisdiction."

It should be clear that since this decision applies to the extraordinary equity jurisdiction of the chancery court, it very clearly would also apply to the circuit court's jurisdiction at law. Particularly pertinent to the present litigation is the fact that McGehee's appeal from the order of the commission to the circuit court was not heard—due to the fact that he did not timely prosecute it. Here also, no appeal was prosecuted, leaving the decision of the commission unchallenged—and fully effective.

Nor was this court's action in *McGehee* inadvertently taken; rather it was specifically called to the attention of this court by the lone dissenter who, in effect, presented the same argument made here. Quoting from the dissent:

"If McGehee can substantiate the allegations of his complaint in chancery court, it means money in his pockets. I assume that no one questions his right to try to prove his case against Mid South in a court of competent jurisdiction. The majority opinion denies McGehee this right unless the Arkansas Public Service Commission is in fact such a court.

To my mind, to state the above issue is to answer it. I have never heard it contended or even intimated that the Arkansas Public Service Commission was a court, in law or equity, to resolve legal differences between individuals or corporations.

It cannot be disputed that the Public Service Commission has only such powers as are given it by the legislature. Ark. Stats. § 73-115 contains that grant of powers which is 'all matters pertaining to the regulation and operation of—' (naming the several utilities). Nowhere is the commission invested with the general powers of a court. Yet, the effect of the majority opinion

is to invest the commission with the *general* jurisdiction of a duly constituted court."

The dissenting opinion then states that the right of appeal to the circuit court is not adequate because, in a court hearing, evidence would be introduced in accordance with rules developed by decisions over a long period of time, but that the commission is not bound by the strict technical rules of pleading and evidence; that the appeal to the circuit court would be only heard upon the record presented, which in the view of the dissenting Justice, was not adequate. As stated, this court, by a vote of six to one, held to the contrary, and what was said in *McGehee, i. e.,* that his remedy "through the proceedings before the commission and on appeal, was full, adequate and complete * * *" is fully applicable to the instant litigation.

Appellees also offer an additional defense to appellant's complaint, *viz,* that the cause of action was barred under the doctrine of *res judicata,* this defense being based on our opinion in *Coffelt* v. *Arkansas Power and Light Company supra.* There may well be merit in this contention, but since we consider the first point, heretofore discussed, to be dispositive of the question posed in the litigation, there is no need to discuss the second.

Affirmed.