STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, MRS. PATRICIA K. BYRNE (COMPLAINANT), MRS. MATTIE LEE CLARK (INTERVENOR-PROTESTANT), DUKE POWER COMPANY, VIRGINIA ELECTRIC & POWER COMPANY, CAROLINA POWER & LIGHT COMPANY, NANTAHALA POWER & LIGHT COMPANY, SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, GENERAL TELEPHONE COMPANY OF THE SOUTHEAST, PIEDMONT NATURAL GAS COMPANY, PENNSYLVANIA & SOUTHERN GAS COMPANY, UNITED CITIES GAS COMPANY, PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INC. (RESPONDENTS) v. NORTH CAROLINA CONSUMERS COUNCIL, INC., (INTERVENOR)

No. 7310UC407

(Filed 25 July 1973)

Utilities Commission §§ 2, 6— late payment charge — authority of Commission

The Utilities Commission had authority to adopt a rule providing that utilities subject to its jurisdiction may charge 1% per month as a late payment charge on amounts owing 25 days or longer after the rendering of the bill.

APPEAL by Intervenor from Order of Utilities Commission of 24 November 1972.

On 26 March 1971, the Utilities Commission entered an Order Instituting Rule-Making Proceeding. The Commission stated in its order that its review of the tariff provisions on file with the Commission "relating to the billing practices of the various public utilities operating within the State of North Carolina indicate a diversity in billing rules and practices having a substantial effect on the public interest." The Commission further noted that any discrimination in public utility billing practices is particularly subject to customer objection and the Commission was of the opinion that it should investigate generally the billing practices of the public utilities within this

State. In the investigation, the Commission proposed to evaluate the "justness and reasonableness" of the "due and payable within ten days" provisions, the "net and gross" billing practices, the "additional charge of 5%" practice, and any "discounts" or "penalties" which may constitute a rate differential established to induce prompt payment.

The Commission entered its Interim Order Proposing Uniform Billing Procedure Rule R12-9 on 25 April 1972. On 15 May 1972, Intervenor filed a petition to intervene and requested a public hearing. On 8 June 1972, an order was entered granting the petition to intervene, setting the matter for further public hearing on 31 July 1972, and staying the effectiveness of the 25 April 1972 order.

After hearing, the Commission entered an order providing that "No utility shall apply a late payment, interest, or finance charge to the balance in arrears at a rate of more than 1% per month." The order further provided that no interest, finance, or service charge shall be imposed on the customer if the account is paid within 25 days from billing date. The utility was required to let the bill clearly show the interest and, if the utility intended to apply an interest, finance, or service charge, tariff provisions to that effect must be filed with the Commission and such charges must be charged on a uniform basis, applicable to all customers and all classes of services.

From this order Intervenor appealed.

*Crisp and Bolch, by Thomas J. Bolch, for the North Carolina Consumers Council, appellant.*

*Edward B. Hipp and William E. Anderson for the North Carolina Utilities Commission, appellee.*

MORRIS, Judge.

Intervenor's exceptions and assignments of error bring forward only one question for decision and that is whether the Commission has lawful authority to adopt a rule providing that utilities subject to its jurisdiction may charge no more than 1% per month to their customers in North Carolina as a late payment charge on amounts owing 25 days or longer after the rendering of the bill.

Intervenor argues that the 1% per month permissible charge amounts to interest; that the Utilities Commission has

no authority to set interest rates, a matter for the General Assembly, and that even if the Commission has the authority, the rate set is usurious because it is more than the statutory legal rate of 6% per annum and is not a statutory exception to the legal rate.

We agree with Intervenor that this is a case of first impression in North Carolina.

The Commission heard evidence and received exhibits. Intervenor does not contend that any findings of fact are not supported by the evidence. It, in fact, concedes that if the Commission had the power and authority to fix any amount of interest or service charge, or penalty, the 1% per month is justified by the evidence before the Commission. Nor does Intervenor question the Commission's statement in its order that "the late payment charges heretofore levied in the amounts of 5% or 10% per month are misleading, unreasonable and discriminatory under G.S. 62-140," nor the Commission's authority and jurisdiction to make such a declaration.

Intervenor does, however, strenuously contend that the Commission was without authority to enter an order allowing public utilities to make any late payment charge which, it argues, amounts to setting interest rates. We look to the statutory authority of the Commission.

Public Utilities are regulated by the Utilities Commission pursuant to legislative authority under the provisions of Chapter 62 of the General Statutes of North Carolina. The General Assembly has declared that rates, service, and operations of public utilities are affected with a public interest. In declaring the policy of North Carolina with respect to public utilities, the General Assembly declared that, among other things, it is the policy of the State "to provide just and *reasonable rates and charges* for public utility services without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices." (Emphasis supplied.) G.S. 62-2.

"Rate" is defined as "every compensation, charge, fare, tariff, schedule, toll, rental and classification, or any of them, demanded, observed, charged or collected by any public utility, for any service product or commodity offered by it to the public, and any rules, regulations, practices or contracts affecting any such compensation, charge, fare, tariff, schedule, toll, rental, or classification." G.S. 62-3 (24).

By G.S. 62-130(a) the Commission is authorized to "make, fix, establish or allow just and reasonable rates for all public utilities subject to its jurisdiction," and by G.S. 62-130(d) is authorized "as often as circumstances may require," to "change and revise or cause to be changed or revised any rates fixed by the Commission, or allowed to be charged by any public utility."

G.S. 62-140(a) provides, in part: "No public utility shall, as to rates or services, make or grant any unreasonable preference or advantage to any person or subject any person to any unreasonable prejudice or disadvantage."

We think it clear that this is a part of the rate making power of the Commission. In fixing rates to be charged by the public utility, the Commission is directed by G.S. 62-133(b)(3) to ascertain the public utilities reasonable operating expenses, among other things. Obviously the cost of collecting past due accounts is an operating expense. Allowing the penalty or a discount affects the amount of net return to the company, and has a definite influence on the fair rate of return a company should earn. It is certainly a fair assumption that a penalty or discount is considered by a company in establishing its rates. If the company uses the discount plan (i.e., allowing a discount for prompt payment), the base rate will be comparatively higher. On the other hand, if a penalty is charged for late payment, the base rate would not include the cost of collection. See *Dearborn v. Consolidated Gas Co.*, 297 Mich. 388, 297 N.W. 534 (1941). To say that the charge is unrelated to rates is to fail to consider the realities.

We think a recent case decided by the Supreme Court of Arkansas is directly in point and the opinion well reasoned. In *Coffelt v. Ark. Power & Light Co.*, 248 Ark. 313, 451 S.W. 2d 881 (1970), reh. denied 27 April 1970, the suit was brought as a class action for declaratory judgment as to whether imposition by utility company of a late charge against customers violated prohibition against usury. The late charge imposed was 8% of first $15 of net bill and 2% of any amount in excess of $15 against customers who did not pay their monthly bills within 10 business days. In affirming the order of the Commission approving the proposed late charge the Court said:

"The late charge, as approved by the Public Service Commission, is simply a practical method of preventing dis-

crimination among the utility company's customers. The prohibition against discrimination in utility rates is basic in public utility law. Pond, Public Utilities, § 270 (4th ed., 1932). That prohibition is incorporated in our statute governing public utilities: 'No public utility shall, as to rates or services, make or grant any unreasonable preference or advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage.' Ark. Stat. Ann. § 73.207 (Repl. 1957). Even before the passage of that statute we had held that a public utility must serve its consumers without unjust discrimination, though the utility may make a reasonable classification of its consumers. Ark. Natural Gas Co. v. Norton Co., 165 Ark. 172, 263 S.W. 775 (1924).

The late charge, far from being an exaction of excessive interest for the loan or forbearance of money, is in fact a device by which consumers are automatically classified to avoid discrimination. Its effect is to require delinquent ratepayers to bear, as nearly as can be determined, the exact collection costs that result from their tardiness in paying their bills. The appellant's argument actually means in substance not that the utility company be prevented from collecting excessive interest but that its customers who pay their bills promptly be penalized by sharing the burden of collection costs not of their making." 248 Ark. at 317.

We agree with the Arkansas Court's reasoning. Applying the same principles to the case now before us, we conclude that the order of the Utilities Commission should be and is

Affirmed.

Judges CAMPBELL and PARKER concur.