STATE of Missouri ex rel., John ASHCROFT, Attorney General, ex inf., John A. PELZER, Commissioner of Administration, Appellant,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent,

and

Missouri Power & Light Company, Intervenor/Respondent.

and

STATE of Missouri ex rel. John C. DANFORTH, Attorney General, Relator/Appellant,

v.

PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent,

and

Missouri Power & Light Company, Intervenor/Respondent.

No. WD 34535.

Missouri Court of Appeals, Western District.

July 24, 1984.

Before SOMERVILLE, P.J., and CLARK and LOWENSTEIN, JJ.

CLARK, Judge.

The State of Missouri as appellant seeks review in this consolidated action of proceedings separately presented to the Public Service Commission regarding late payment charges imposed on state accounts owed to respondent electric utility companies. The question presented is whether the state as sovereign may be involuntarily subjected to added charges for failure to make timely payment of bills for electric services consumed.

A common issue in the first point of the case applicable to both respondents arises from different procedural origins. As to Missouri Power and Light, hereafter MPL, a proposed tariff was filed by MPL with the commission amending its rate to large governmental users to include a late payment charge of one percent a month applied to accounts unpaid twenty days after billing. The commission approved the late payment charge but directed amendment of the period from twenty to forty days. As an intervenor in the case, the state filed a writ of review in the circuit court and now appeals the judgment which affirmed the decision of the commission.

In the case of Kansas City Power and Light, hereafter KCPL, its tariff provides no special government rate. The rate for all non-residential accounts does include a late payment charge which it has applied to delinquent accounts owed by the state. In a complaint filed with the commission, the state raised the issue of whether the late payment charge could be imposed. The commission found that the charge was valid under the KCPL tariff, a writ of review was taken by the state and this appeal is prosecuted from the adverse decision by the circuit court.

The state contends in its first point that the commission erred in concluding the late payment charge was an element of the utilities' rate structure and was not interest. The classification of the charge as interest is of significance to the state be-

cause it claims immunity from assessment of interest on its bills unless the charge has been countenanced by an act of the legislature or by the terms of a lawful contract. The state argues that the public service commission order is unlawful if the effect of the order approving late payment charges on utility bills is to impose interest expense on public funds not otherwise provided in the contracts for the services.

We first note the scope of appellate judicial review in this case, particularly because the state's first challenge is to the validity of the commission's finding that the late payment item in the utilities' rate structure was not interest. The review by this court is of the order entered by the commission and accords no deference to the determination made by the circuit court. *State ex rel. Public Water v. Public Service Commission,* 600 S.W.2d 147 (Mo.App.1980). On appellate review, the commission order enjoys a presumption of validity and as to matters of reasonableness, the court may not substitute its judgment for that of the commission if the commission order is supported by substantial and competent evidence on the record as a whole. *State ex rel. Utility Consumers Council v. Public Service Commission,* 585 S.W.2d 41 (Mo. banc 1979). The court is not authorized to weigh the evidence heard by the commission. The findings of the commission are prima facie correct and the challenger carries the burden of making a convincing showing that those findings are not reasonable and lawful. *State ex rel. Inman Freight System, Inc. v. Public Service Commission,* 600 S.W.2d 650 (Mo.App.1980).

The principal point of controversy before the commission and here was and is whether the charges in question imposed by the utility on the bill of a customer not paid by the due date are the equivalent of and should be identified as interest. The state's argument assumes, although no Missouri cases are cited to support the proposition, that if the late payment charge were correctly identified for what it is, a charge for the use of money, the state would be entitled to escape payment of those charges on its electric utility bills. It assumes avoidance of interest charges on overdue accounts is a perquisite of the sovereign.

The practice in utility rate making of accounting for the expense of delinquent accounts is common and assumes a variety of forms. In some instances it may involve a discount for prompt payment, in others, a gross-net rate differential or, as here, it may take the form of a penalty for tardy payment. In whatever form, however, the charge is attributable to direct costs incurred by the utility on those accounts of customers who fail to make timely payment of their bills. The evidence to this effect was uncontroverted and the commission order so found.

It necessarily follows that expenses imposed on the utility by customers who pay late will be reflected in the operating costs of the company. As the court observed in *State ex rel. Utilities Commission v. North Carolina Consumers Council, Inc.,* 18 N.C.App. 717, 198 S.E.2d 98 (1973), the cost of collecting past due accounts is an operating expense which has an influence on the fair rate of return a company should earn and, in turn, is a factor taken into account in setting rates. If a utility is denied the opportunity to charge late payment customers, those who pay their bills promptly will be indirectly penalized by sharing collection costs entirely disassociated from their own accounts and the service they consume.

The subject was considered in *Coffelt v. Arkansas Power & Light Co.,* 248 Ark. 313, 451 S.W.2d 881 (1970) where a class action was brought to determine if late payment charges were interest and therefore subject to usury legislation. The court held the charge not to be interest but a method of preventing discrimination among customers of the utility. The court stated:

"The late charge, far from being an exaction of excessive interest for the loan or forbearance of money, is in fact a device by which consumers are automatically

classified to avoid discrimination. Its effect is to require delinquent rate payers to bear, as nearly as can be determined, the exact collection costs that result from their tardiness in paying their bills." *Id.* 451 S.W.2d at 884.

Other decisions have uniformly supported the view that late payment charges included in regulated utility rate structures are not the equivalent of interest charged for the use of money. *Tennyson v. Gas Service Company*, 506 F.2d 1135 (10th Cir. 1974); *Ferguson v. Electric Power Board of Chattanooga, Tennessee*, 378 F.Supp. 787 (E.D.Tenn.1974); *Jones v. Kansas Gas and Electric Co.*, 222 Kan. 390, 565 P.2d 597 (1977); *State ex rel. Guste v. Council of City of New Orleans*, 309 So.2d 290 (La.1975). Appellant cites no case authority supporting its claim that late charges are to be equated with interest and independent research has disclosed none.

The evidence before the commission in these cases demonstrated that both utilities incurred significant collection expenses directly attributable to consistent delinquencies in payment of state accounts. In the case of MPL, the evidence showed an average monthly state delinquency of $110,-000.00 computed on an annual basis which, in the situation of a private consumer ratepayer would have resulted in discontinuance of service. Specific instances of state agencies which make no payments at all on utility bills for months and, in the case of the Division of Insurance for more than one year, were given. As to KCPL, where the case was based on service to a single representative facility operated by the State Board of Education, the records disclosed a consistent late payment history agreed to be typical of all state accounts with KCPL. Once the late payment charge was imposed, however, the delinquency was eliminated and bills were regularly paid within fifteen days of submission.

Viewed from the standpoint of evidentiary support, the decision by the commission that a late payment charge on utility service bills rendered to the state is not interest but an allocation of the cost of service is warranted and reasonable. It is undeniable that the utility incurs added costs for processing bills not paid currently, which costs include not only the reduction in operating funds from lessened cash flow but billing and accounting expenses associated with follow-up procedures and partial payments which the evidence showed to have been a practice with some state agencies. These costs would be unfairly borne by other ratepayers if the late charge schedule were not imposed on the few customers who do not pay bills currently.

The state's argument is also flawed on other grounds. In contending that the commission inaccurately and improperly denied classification of the late payment charge as interest, the state assumes an approved utility rate schedule which included an interest charge on overdue accounts would be inapplicable to bills rendered the state. This the contention seems to say must follow because the state is not liable to pay interest on its debts unless its consent to do so is manifested by an act of the legislature or by a lawful consent.

Even assuming the validity of this latter proposition, for which no Missouri case authority is cited, the circumstances of utility rates distinguish those charges from debts on accounts generally for goods and services purchased by the state. In the first place, the rate structure for utility services, including late payment charges by whatever name, are published and set by authority of the state regulatory agency. Any customer, including the state, which contracts for the service implicitly agrees to pay the published rate as a condition of accepting the service. There is no second level of ratemaking whereby an individual customer may claim exemption from an otherwise applicable segment of the published rate. If an interest charge for late payment is provided in the utility rates promulgated by the commission, the state necessarily consents to payment of the charge by contracting for service and not making timely payment on its accounts.

In the second place, if the interest charge is an item included in the rates adopted by

the commission and applicable to all customers of the utility, the state is precluded by law from seeking or receiving an advantage not available to other utility customers receiving service under similar conditions. Section 393.130, RSMo 1978 expressly forbids rate discrimination among customers of gas, electrical, water or sewer corporations for like and contemporaneous service under the same or substantially similar circumstances or conditions.

The state's contention that the commission order is in error in finding the late payment charge on state accounts owed MPL and KCPL is not an interest penalty lacks merit because the facts and the law adequately support the decision. Moreover, the point is substantively deficient because the Public Service Commission is empowered by statute to establish the rate structure for MPL and KCPL and, when it has so acted in accordance with the legislative power delegated to it, the rates so promulgated are applicable to all utility customers without special exemption or exception where the state occupies the status of a customer.

In a second point related only to the case of KCPL, the state contends the commission finding disallowing its protest to the fifteen day payment period was unlawful and unreasonable because the evidence showed the state was unable to pay electric utility bills in less than forty days. The argument focuses on the evidence adduced regarding the necessity for processing payment requests through various levels of bureaucracy to assure that the state received the services, that the charges are proper and that funds have been appropriated for the purpose.

Without recounting in detail the full explanation which the state's evidence presented in justification of the delay accompanying payment of bills, it will suffice to say that each invoice must pass at least four independent examinations essentially duplicating the same verifications, and at each stage, the intervention of other work required of the officer, inattention or other mischance may extend the already laborious process. Despite the routine character of electric bills for the facility chosen as a test location in the case, approximately 80 percent of the bills were allowed to become delinquent, but even the periods of delinquency were not uniform. There was no evidence that the state recognized or implemented voluntarily any incentives to achieve prompt payment. The commission found the business methods employed by the state to be self-imposed and therefore subject to improvement.

▮ In effect, the state argues that the commission's approval of a late payment charge by KCPL imposed fifteen days after rendition of the bill is unreasonable because the evidence required the finding that the state cannot comply. This assertion ignores substantial and competent evidence in the record. There is no constraint imposed by law on the state to engage in the protracted review of invoices which the evidence described. The duty to authorize and certify for payment only those accounts for which appropriated funds are available and for which goods and services have actually been rendered does not impose any particular regimen. The commission was persuaded and the evidence supports the conclusion that with appropriate incentives, the state could substantially reduce the time for processing account payments. The validity of this proposition was demonstrated by the state's performance in making payments to KCPL on time once the late payment charge became effective.

The analysis and disposition in this opinion of the primary point, the state's claim of immunity from liability for assessment of any late payment charge, makes no distinction between the two consolidated cases, that of MPL and KCPL. The positions of the contesting parties, the facts and the issues are the same. As to the claim by the state that the payment period of fifteen days under the KCPL tariff is too brief, the issue is applicable only to the latter case and, to this point has been considered apart from the MPL case. So viewed, the commission decision is entitled to affirmance.

In its argument, however, the state points to the earlier MPL decision by the commission and contends the order in the KCPL case is arbitrary and unreasonable when considered in conjunction with the MPL decision. In that case, MPL sought amendment of its governmental user rate to impose a late payment penalty to accrue 20 days after rendition of the statement. By its order entered December 20, 1975, the commission approved the late charge but found the payment period unreasonably short. That time was increased to 40 days. In the KCPL case, the state contended the 15 day period set out in the KCPL non-residential user tariff was unreasonably short and asked that if a penalty were to be sanctioned as to state accounts, the grace period be 40 days. Unaccountably, the commission denied the complaint thus leaving the state only 15 days in which to pay KCPL invoices without penalty.

The state asserts and the record appears to confirm that the evidence in the KCPL case showed no difference in state accounting procedures or payment capabilities from those which prevailed in 1975 and no difference between processing KCPL bills and those rendered by MPL. The inconsistency between the two decisions is readily apparent. The brief submitted by the commission makes no effort to explain or distinguish the two situations or to counter the state's contention that if 40 days was reasonable in one case, it should likewise be reasonable in the other.

The decision of the Public Service Commission of Missouri in case number 18,386 (The MPL case) is affirmed. The decision in case number EC–81–197 (The KCPL case) is affirmed to the extent the decision sanctions tariff provisions imposing late payment charges generally on accounts owed by the State of Missouri. The case is, however, remanded to the commission for further proceedings and decision on the length of the payment period available before imposition of late charges, all in consideration of the commission's prior deci-

sion on the same subject in case number 18,386 (the MPL case).

All concur.