**STATE ex rel. Richard L. CONNER d/b/a Conner's Express, Relator-Appellant,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri, Respondent,**

and

**Beaufort Transfer Co., Intervenor-Respondent.**

**No. WD 36936.**

Missouri Court of Appeals, Western District.

Jan. 14, 1986.

Arthur J. Cerra, Kansas City, for relator-appellant.

Frank W. Taylor, Jr., Kansas City, for intervenor-respondent.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

BERREY, Judge.

This is an appeal from a judgment of the Circuit Court of Cole County affirming the orders of the Missouri Public Service Commission (PSC) denying appellant's application to operate over irregular routes as a common carrier in vehicles licensed for a gross weight of 9,000 pounds or less. Judgment affirmed.

Richard L. Conner, d/b/a Conner's Express, a sole proprietorship in Lebanon, Missouri, runs a "pony express carrier" which transports general commodities in statutorily exempt vehicles under § 390.-030, RSMo 1978 that are licensed for a gross weight of 6,000 pounds or less. On April 2, 1982, and as amended September 20, 1982, appellant made application with the PSC seeking authorization to transport general commodities (except Class A and B explosives, household goods, commodities in bulk and those requiring special equipment) over irregular routes in motor vehicles licensed for a gross weight of 9,000 pounds or less. Without regard to the location of any points or places on the routes of a regular common carrier, the appellant desires certification to transport (1) radially between Kansas City and St. Louis and fifty cities,[1] (2) radially between Lebanon and Sedalia and Washington, Missouri; (3) from Lebanon to Boonville, Columbia, Eldon, Fenton, Joplin, Mexico, Moberly, Ozark, Steelville, Sullivan and Webb City; and (4) from Springfield to Boonville, Cuba and Moberly. Protests to appellant's application were filed and evidence was presented at a hearing by the following intervenors: Highway Transportation Co., Inc.; Marshall Trucking; Webster Express; Beaufort Transfer Company; and H & S Motor Freight, Inc.

As part of appellant's case, thirteen shippers from St. Louis, Kansas City, Lebanon and Springfield testified in support of the request for certification. After four days of testimony was heard on the issue, the PSC on September 30, 1983, rendered a report and order denying appellant's application. On January 19, 1984, the PSC, however, granted appellant's application for reconsideration. In the PSC's second examination of the issue, the PSC reweighed the evidence in view of this court's decision in *State ex rel. Gulf Transport Co. v. Public Service Commission*, 658 S.W.2d 448 (Mo.App.1983) which found "the potential benefits yielded by competition" were integral factors in the decision

1. Auxvasse
   Bolivar
   Boonville
   Buffalo
   California
   Camdenton
   Carthage
   Cedar City
   Centralia
   Columbia
   Cuba
   Eldon
   Fayette
   Fenton
   Ft. Leonard Wood
   Fulton
   Gravois Mills
   Holts Summit
   Hurricane Deck
   Jefferson City
   Joplin
   Kansas City
   Kingdom City
   Lake Ozark
   Lamar
   Laurie
   Lebanon
   Marshfield
   Mexico
   Moberly
   Monett
   Osage Beach
   Ozark
   Pacific
   Richland
   Rolla
   Sedalia
   Springfield
   St. Louis
   St. Roberts
   Steelville
   Sullivan
   Sunrise Beach
   Tipton
   Union
   Versailles
   Waynesville
   Warrensburg
   Washington
   Webb City

to grant motor carrier authorization. On April 16, 1984, the PSC again denied appellant's application. On appeal to the Circuit Court of Cole County, the court affirmed the PSC's reports and orders. The present appeal ensued. Additional facts will be explored to aid in the resolution of the issues presented.

Appellant first contends the PSC unlawfully established a new policy of granting motor carrier authority only where the evidence establishes reduced costs and more efficient or better quality service that is contrary to the statutory framework for such authorization set forth in § 390.051, RSMo 1978. This point is ruled against the appellant.

■ As a preliminary matter, judicial review is restricted to whether the PSC's reports and orders are lawful and reasonable. *State ex rel. Ashcroft v. Public Service Commission*, 674 S.W.2d 660, 662 (Mo. App.1984). "[Q]uestions of "lawfulness" turn on whether the Commission's orders or decisions are statutorily authorized and questions of "reasonableness" turn on whether there is competent and substantial evidence upon the whole record to support them." *State ex rel. Marco Sales v. Public Service Commission*, 685 S.W.2d 216, 218 (Mo.App.1984) (citing *State ex rel. Ozark Elec. Corp. v. Public Service Commission*, 527 S.W.2d 390, 392 (Mo.App. 1975).

■ Like *Gulf Transport, supra,* this case centers on § 390.051(5) and (6) which state:

5. If the commission shall find from the evidence that public convenience and necessity will be promoted or that there is public need for the creation of the service, proposed, or any part thereof, and that the applicant is qualified properly to perform the service proposed and to conform to the provisions of sections 390.011 to 390.176 and the requirements, rules and regulations of the commission established thereunder, a certificate therefor shall be issued.

6. In determining whether a certificate should be issued, the commission shall give reasonable consideration to the transportation service being furnished by any common carrier by rail or motor vehicle and the effect which the proposed transportation service may have upon such carrier; provided, that the issuance of a certificate of convenience and necessity to one carrier shall not prohibit the granting of such certificate to another carrier over the same route if in the opinion of the commission the public convenience and necessity will be promoted by so doing.

A brief discussion of the major decisional law surrounding the above sections is needed. In *State ex rel. Beaufort Transfer Co. v. Clark*, 504 S.W.2d 216, 219 (Mo.App. 1973), this court found that the evidence must demonstrate "that the additional service would be an improvement justifying its cost and that the inconvenience of the public occasioned by the lack of a carrier is sufficiently great to amount to a necessity." Although a subordinate interest, adverse consequences to existing carriers due to the certification of additional carriers is balanced against this "public need." *State ex rel. Churchill Trk. Lines v. Public Service Commission*, 555 S.W.2d 328, 335 (Mo. App.1977); *State ex rel. Twehous Excavating Company, Inc., v. Public Service Commission*, 617 S.W.2d 104, 106 (Mo.App. 1981). Finally, in *Gulf Transport, supra,* at 456–57, this court added another weight to the balancing act: potential benefits accruing to the public from additional competition. It is significant that this balancing process is solely within the "commission's discretionary exercise of its expertise in the field of transportation." *Churchill, supra,* at 335; *State ex rel. Inman Freight v. Public Service Commission*, 600 S.W.2d 650, 655 (Mo.App.1980).

Appellant asserts the PSC's "new evidentiary standard" is incompatible with the above statutory requirement of "public need" and is incongruous with the decisional framework specified in *Gulf Transport, supra.*

Appellant points in the PSC's order of April 16, 1984:

> An applicant seeking to provide service where existing service exists should provide evidence of any increased efficiency, decreased cost or better quality service expected from the proposed service. Competition is beneficial where it reduces costs, provides more efficient service or provides better quality service, and these factors are important in determining whether to grant the authority requested. The Commission considers the benefits of competition an important factor in determining whether to grant an application.

Appellant argues that the above PSC policy forecloses competition and operates as a "protective mechanism" to existing carriers because it requires a more sensitive standard of proof.

Analysis of *Gulf Transport, supra,* demonstrates the PSC's so called "new policy" is not one of protectionism but rather is merely a reflection of the decisional law in Missouri explicative of § 390.051. In *Gulf Transport, supra,* at 456, this court noted, "Competition benefits the carrier-using public, because it forces *prices closer to cost and creates incentive to provide the service desired by consumers."* (Emphasis added).

Standard economic principles demonstrate that competition will force prices downward towards actual cost and simultaneously produce the most effective utilization of resources. *See,* Gardner, *Entry and Rate Regulation of Intrastate Motor Carriers in Missouri: A Strategy For Reform,* 47 Mo.L.Rev. 693 (1982). Decreased costs and increased efficiency are simply positive manifestations of the probable existence of increased competition. In short, while appellant argues the PSC failed to follow the *Gulf Transport* decision in evaluating competitive effects, he does not want to bear the burden of producing evidence of these public benefits. In sum, this court finds the PSC required no more of appellant in the way of proof than is seen in the existing statutory and case authority.

In addition, appellant did not present evidence that these benefits from competition would exist if the application was granted. Richard Conner testified that with a 9,000 pound gross weight limit he would have to dispatch only one truck instead of two when a customer has a weight load in excess of the 6,000 pound limit thereby reducing fuel costs, time, etc. Further testimony by Mr. Conner reveals he attempted to meet his burden through mere conjecture and speculation. *See, State ex rel. Oliver v. Public Service Commission,* 542 S.W.2d 595, 598 (Mo.App.1976). On cross examination:

Q. And, as I understand it, in answer to some questions from Mr. Huber, you do have some trucks standing by now that are not able to use at the present time; is that correct?

A. Yes, sir. That's a fact.

Q. And why can't you use those trucks?

A. The two of the trucks that are setting idly at the dock weigh 6,200 pounds empty.

Q. So actually you could not have a payload of less than 3,000 pounds on those two trucks, could you not?

A. That's right. 28.

Q. Even if you're is [sic] able to put them in operation?

A. Yes, sir.

Q. Now, what is your empty weight on the trucks that you're now operating?

A. *I don't have any idea. I don't weigh the trucks. I would assume* they got to weigh close to—between 4,000 and 4,500 pounds.

Q. So you have a payload of around 1,500 to 2,000 pounds on those trucks now; is that right?

A. For a 6,000 pound exception, yes sir.

(Emphasis added).

Because judicial review is limited, this court must only determine whether the findings could have been reasonably made

and whether the decision was supported by competent and substantial evidence. *State ex rel. Ashcroft, supra,* at 662. In the instant case, the record does in fact support the findings made by the PSC.

Appellant further alleges that the PSC failed to engage in the complete balancing process as described above because the competing interests and the facts to support them were not given the detailed analysis as required by law.

In the second report's order on April 16, 1984, the PSC stated:

[A]fter reviewing the evidence specifically indicated and the arguments of the parties, [the Commission] finds there is insufficient evidence to reverse its original order. The Commission finds that its original order correcly [sic] weighed the evidence adduced by the parties and reached the correct conclusions. The Commission has weighed the evidence in light of the standards set forth granting an application. Applicant provided insufficient evidence of the increased efficiency and decreased cost of the proposed service to support the authority requested.

This excerpt reveals the balancing process took place over the course of two decisions. The PSC in its second report and order adopted its original order which primarily dealt with the diversion of existing service, and focused somewhat on the public's need. The PSC stated in its order of September 30, 1983, that:

It is clear that diversion could occur if the instant application were granted. Some of the shippers indicated the lower prices of 9,000 pound carrier can charge as a factor in requesting applicant's service. While there were no significant complaints about the protestants, it is also clear that the supporting shippers were not using them to a large extent or had not tried them for various reasons. Based upon the facts found herein, the Commission can find no lack of motor carrier service and finds no need exists for the proposed service.

The PSC recognized in its second report and order that "its original order placed too much emphasis on existing service and not enough on shippers' needs and possible benefits to the public from the grant of authority." The other two prongs of the triparte framework were then considered in light of evidence on record. Therefore although accomplished in a somewhat fractured fashion, the balancing process as laid out by the decisional law of this court was completed and the PSC made the corresponding conclusions.

In addition, the PSC made specific factual findings as a basis for these conclusions. Contrary to the assertions of appellant, there was competent and substantial evidence of record to support those findings.

■ First, the PSC found that "[w]hile a majority of the witnesses were interested in shipping more goods via Conner's Express, some testified only to Mr. Conner's current fitness, which all agreed was excellent, since service to them would not change if the instant application were granted." The record reveals substantial and competent evidence to support this finding. There was testimony from John Blackford of St. Louis Envelope, St. Louis, Missouri and others [2] that even if the current application were granted, Conner's Express would be used on approximately the same basis as it was before. The record discloses that the testifying shippers thought the service provided by Conner was excellent, however, this fact alone, as noted by the PSC, cannot be the basis for the grant of the application.

■ Secondly, the PSC found that only three of thirteen shippers had had recent difficulties with existing carriers. Appellant contends the PSC's finding is erroneous because ten shippers, not three, are having recent difficulties with the carriers

---

**2.** Jim Randall, Glasco Electric, St. Louis; Bob Harper, A.E. Lottes Co., St. Louis; Bill Danek, Page Printing, Lebanon, Mo.; Bob Widman, Glasco Electric, Springfield, Mo.; Thomas L. Fedak, Shaughnessy Knipp Have Paper Co., St. Louis, Mo.; Gerald Poston, McPike Co., Kansas City; Dave Mathia, Lieberman Enterprises, Kansas City, Mo.

and he presents a voluminous list of references in the transcript to support this fact. For example, appellant makes reference in the transcript where John Blackford states existing carrier have not provided consistent and timely pick ups. Further testimony by Mr. Blackford reveals:

Q. What has been your specific complaint with Beaufort? Can you give me a location and time and so forth so we can check it out?

A. I couldn't give you an exact location, no. We've had trouble with them not making second-day pickups. The customer calls us and says that they haven't gotten their shipment.

Q. And where were those locations?

A. Columbia.

Q. Columbia. Can you give me a time or a date?

A. I sure can't.

Q. How many shipments have you had to Columbia this year?

A. I don't know.

Q. Has Beaufort handled all of them?

A. No.

Q. And when did this occur, once or twice or what?

A. Oh, it occurred several times.

Q. All to Columbia?

A. To other points.

Q. What other points?

A. Rolla.

Q. Do you know when?

A. No. It's been probably a year ago.

Q. Within the last three months have you had any Beaufort complaints that you know of?

A. No.

Q. In the last three months have you had any Ecco complaints that you know of?

A. In the last three months, no.

This court gives deference to an administrative agency in the matter of weight to be given to conflicting evidence. *Ballew v.*

*Ainsworth,* 670 S.W.2d 94, 102 (Mo.App. 1984). In the above instance, PSC implicitly found that Mr. Blackford's testimony did not reveal existing deficiencies with the current carriers. This court must agree.

Similarly, appellant cites to the testimony of Dave Mathia from Lieberman Enterprises in Kansas City, Missouri:

Q. Now, you said you have been using the services of Frisco, Beaufort, and Middlewest on shipments ranging from 180 to 250 pounds?

A. Yes.

Q. Do those carriers provide you with overnight service?

A. Most of the time, yes.

Q. Well, on what percentage of occasions don't they supply you with overnight service?

A. I don't have the specifics, but I do know that we have had periodic occasions where they don't get it overnight.

Q. What kind of service would they render if they did not get it overnight, sir?

A. Second day.

Q. Second day?

A. Yes.

Q. Is that satisfactory to your customers?

A. Yes.

This court fails to see how the testimony of Mr. Mathia as well as the testimony of other shippers cited by appellant stand for the appellant's proposition that ten shippers are having troubles with the carriers.

Finally, the PSC found that several shippers were "interested in lower rates as opposed to better service." Appellant asserts no shipper testified as such and additionally, contends that the PSC failed to "consider and make findings concerning competition with the potential for lower rates."[3]

█ The record reveals that St. Louis envelope, Glasco Electric of St. Louis, and

---

**3.** Appellant relies on *Middlewest Motor Freight Bureau,* 27 Mo. PSC (N.S.) 123 (December 20, 1984) in which the PSC "gave the carriers free-

dom to set rates below the maximum in one day's notice" to promote and encourage pricing competition. Appellant argues that PSC must

Lottes viewed the rates as the primary factor in the selection of a carrier. Mr. Blackford testified:

Q. The balance of the time then your shipping clerk makes a determination?

A. Right, the cheapest way possible.

Q. That is the determining factor, cheapest way possible?

A. Yes.

Thus, there was a reasonable basis in the evidence for the PSC's finding of fact. Furthermore, the PSC stated that "evidence of the increased efficiency and reduced costs are important factors in determining benefits of competition." Because costs play an important role in determining the rates to be charged, this court cannot accept the appellant's contention that the PSC failed to examine the potential benefit of lower rates. As previously noted, the PSC found the evidence insufficient to conclude that the increase in competition from the grant of the application would result in these public benefits.

Judgment affirmed.

All concur.

make specific findings concerning the potential for lower rates as it is essential in determining